**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| WILLIAM MCMICHAEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 18-997-CJB |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court in this civil matter is a motion (the "Motion") filed by Plaintiff William McMichael ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 54(d), via which Plaintiff seeks an award of $60,732.84 in attorney's fees and costs regarding this litigation. (D.I. 43; *see also* D.I. 46) Defendant United States Department of Justice ("Defendant") opposes the Motion. For the reasons that follow, the Court GRANTS-IN-PART and DENIES-IN-PART the Motion in the manner set out below.

## I.    BACKGROUND

### A.    Factual Background

Near the end of World War II, U.S. servicemen stationed in occupied Germany stole jewels belonging to the Royal Family of Hesse (the "jewels" or the "Hesse jewels"). (D.I. 43, ex. C at ¶ 3) Federal, state and local American officials made efforts to recover those jewels thereafter, but they were not fully successful in doing so. (*Id.* at ¶¶ 3-4)

On September 1, 1961, a plane departing from Malmstrom Air Force Base in Montana crashed in the western part of that state. (D.I. 43 at 1; *id.*, ex. C at ¶ 5) The airplane was searched after the crash; in it were remnants of the Hesse jewels, which were recovered by the U.S. government. (D.I. 43, ex. C at ¶ 5)

Plaintiff is an investigative journalist and a published author whose career spans over 29 years.  (*Id.* at ¶¶ 1-2)  On approximately October 25, 2017, Plaintiff filed a Freedom of Information Act ("FOIA") request with the Federal Bureau of Investigation ("FBI") for, *inter alia*, records relating to the investigation of the theft of the Hesse jewels.  (D.I. 45, ex. A at 6-12, 17)[1]  Plaintiff planned to write a book using the requested information; the book was to be about the theft of the jewels, the U.S. government's unsuccessful attempts to recover the jewels, the possible laundering of the jewels on the black market and the Montana plane crash.  (D.I. 43, ex. C at ¶ 6)

In November 2017, the FBI notified Plaintiff that his FOIA request relating to the Hesse jewels had been designated as FOIPA Request No. 1388114-000 (the "original FOIA request"), and that a search for related documents had yielded "approximately 7,250 pages of records potentially responsive to the subject of [his] request."  (D.I. 43, ex. I)  In a later phone conversation with Plaintiff and in subsequent e-mails, an FBI FOIA representative explained that in light of the amount of potentially responsive records at issue regarding Plaintiff's "large track" request, and in light of the FBI's "current workload and staffing levels," there could be over a two-year delay before Plaintiff would receive any records.  (D.I. 43, ex. C at ¶¶ 11-12; D.I. 45, ex. A at 25)  The FBI further stated that it would complete a review of all relevant files before releasing them to Plaintiff, rather than releasing documents on a piecemeal basis.  (D.I. 43, ex. C at ¶ 13)

The FBI FOIA representative told Plaintiff that he "may accelerate the processing and allow for a more timely receipt of the information" by breaking up his request into multiple

---

[1]     With regard to citations to D.I. 45, ex. A, the Court will cite to ECF-generated page numbers found at the top of the document.

requests of no more than 950 pages of records each.  (D.I. 43, ex. C at ¶ 14; D.I. 45, ex. A at 25)
This would mean that the FBI would consider each 950-page block as a "medium track" request
(not a "large track" request), which would in turn purportedly speed up the processing time.
(D.I. 43, ex. C at ¶¶ 14-15)  That said, the "catch" was that if Plaintiff chose this type of review
process, it would mean that the FBI would only address one 950-page block at a time (such that
only when review of one block was completed could another begin).  (*Id.*)  The FBI FOIA
representative also informed Plaintiff that "'[i]t may take a couple of months to get assigned'"
for medium track review.  (*Id.* at ¶ 16)  Plaintiff agreed to this type of medium track review
process.  (*Id.* at ¶ 17)

Thereafter, Plaintiff would periodically check the status of his request on the FBI's FOIA
status website, in order to see whether his request had been assigned for medium track
processing.  (*Id.* at ¶ 19)  However, the status of Plaintiff's FOIA request continued to be listed
as "awaits assignment[.]"  (*Id.*)  And the FBI FOIA representative had now stopped responding
to Plaintiff's e-mail queries about the request.  (*Id.*)

In February 2018, a different FBI FOIA representative told Plaintiff that his request was
still "'waiting to be assigned[,]'" but that the request should be delivered in its entirety by
November 2018.  (*Id.* at ¶ 20; D.I. 45, ex. A at 26)  By May 2018, the request still remained
unassigned and the estimated date of completion was pushed back to December 2018.  (D.I. 45,
ex. A at 26-27; *see also* D.I. 43, ex. C at ¶¶ 25-28)  Thereafter, Plaintiff retained counsel and
instituted the instant suit, which is further described below.

### B.    Procedural Background

On July 3, 2018, Plaintiff filed this suit pursuant to FOIA, 5 U.S.C. § 552; his Complaint
sought injunctive relief, the disclosure of the requested records and a grant of attorney's fees and

costs.  (D.I. 1)  On July 11, 2018, the case was referred to the Court for handling through case-dispositive motions; later, on September 5, 2018, the parties consented to the Court's jurisdiction to conduct all proceedings in the case, (D.I. 8).

On August 23, 2018, the parties advised the Court that Defendant had agreed to begin processing Plaintiff's requested records on a monthly basis, and that the parties were requesting that the case be stayed to permit this processing of records to continue.  (D.I. 7)  Thereafter, the parties jointly sought to continue the stay a number of times, so that:  (1) Defendant could focus its efforts on producing records to Plaintiff; or (2) the parties could attempt to resolve disputes over certain proposed redactions to the produced documents; or (3) the parties could deal with delays exacerbated by the COVID-19 crisis.  (D.I. 10; D.I. 11; D.I. 14; D.I. 16; D.I. 18; D.I. 20; D.I. 22)  The first batch of processed records was released in October 2018, and eventually the FBI produced 5,297 pages of documents to Plaintiff in response to his original Complaint.  (D.I. 7; D.I. 43, ex. C at ¶ 32)  These documents were produced on a rolling basis, in batches of approximately 500 pages per month.  (D.I. 43, ex. C at ¶ 31)

On August 3, 2020, the stay of the case was lifted, (D.I. 23), and on August 14, 2020, Plaintiff filed a Supplemental Complaint, (D.I. 26).  The Supplemental Complaint included three new FOIA claims that related, respectively, to three additional FOIA requests that Plaintiff had made in the past regarding the Hesse jewels or other matters (FOIPA Request Nos. 1442999-000, 1454046-000 and 1388088-000) (the "additional FOIA requests").  (D.I. 26 at ¶¶ 13-24)  Thereafter, Defendant agreed to begin processing records related to these additional FOIA requests, and so the parties agreed to an additional stay of the case to give Defendant time to comply.  (D.I. 30; D.I. 32)  An additional 2,482 pages of documents were thereafter produced to Plaintiff by the FBI in response to the Supplemental Complaint.  (D.I. 43, ex. C at ¶ 32)  These

4

documents were also produced on a rolling basis, in batches of approximately 500 pages per month.  (*Id.* at ¶ 31)[2]

Once all documents were produced, the parties sought and obtained a further stay of the case to permit them to negotiate a resolution over the issue of attorney's fees and costs.  (D.I. 34; D.I. 36; D.I. 38; D.I. 40)  When it became clear that the parties could not come to an agreement as to that issue, the stay was lifted, and a briefing schedule was set.  (D.I. 42)

On December 14, 2021, Plaintiff filed the instant Motion.  (D.I. 43)  Briefing was completed as of February 22, 2022.  (D.I. 46)

## II.   DISCUSSION

With its Motion, Plaintiff seeks an award of $60,732.84 in attorney's fees and costs, relating to the work of his attorneys at Troutman Pepper Hamilton Sanders LLP ("Troutman Pepper") and Goldstein Law Partners, LLC ("Goldstein Law Partners").  (D.I. 46 at 10)[3]  Below, the Court will first address the relevant legal standards relating to the Motion; thereafter, it will address the parties' arguments on the merits.

### A.    Legal Standards

Pursuant to the FOIA, a "court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any [FOIA case] in which the complainant

---

[2]    Eventually, Plaintiff completed a draft of his book regarding the theft of the Hesse jewels; he used materials obtained pursuant to this litigation to inform his research for the draft.  (D.I. 43, ex. C at ¶¶ 3-8)  Plaintiff plans to publish the book with a trade press publisher in the future.  (*Id.* at ¶ 8)

[3]    This amount includes a request for litigation costs of $509.56; the remainder of the amount is for attorney's fees.  (D.I. 43 at 19; *id.*, ex. B)  Since the request at issue is predominantly for attorney's fees, at times below the Court may refer to it in shorthand as an "attorney's fees request" or a "request for attorney's fees" or the like.  But it should be understood that the request also seeks reimbursement of these costs too.

has substantially prevailed." 5 U.S.C. § 552(a)(4)(E)(i).[4]  This statutory language divides the attorney's fees inquiry into two prongs, described as fee "eligibility" and fee "entitlement." *Brayton v. Office of the U.S. Trade Rep.*, 641 F.3d 521, 524 (D.C. Cir. 2011); *Matlack, Inc. v. U.S. Envtl. Prot. Agency*, 868 F. Supp. 627, 630 (D. Del. 1994).

The eligibility prong asks whether a plaintiff has "substantially prevailed" and thus "may" receive fees. *Brayton*, 641 F.3d at 524 (internal quotation marks and citation omitted); *see also Matlack.*, 868 F. Supp. at 630.  Here, this prong is not at issue, as Defendant does not dispute Plaintiff's eligibility for a fee award.  (D.I. 45 at 1, 6-7; D.I. 46 at 2)

If a plaintiff is eligible to receive fees, then the court proceeds to the entitlement prong, whereby it considers a variety of factors in order to determine whether the plaintiff *should* receive fees. *Brayton*, 641 F.3d at 524; *Matlack*, 868 F. Supp. at 630.  The determination of a plaintiff's entitlement to attorney's fees is guided by the Court's analysis of four non-exhaustive factors:  (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records sought; and (4) whether the government's withholding had a reasonable basis in law.  *McKinley v. Fed. Hous. Fin. Agency*, 739 F.3d 707, 711 (D.C. Cir. 2014); *Matlack*, 868 F. Supp. at 630.  No one single factor is dispositive.  *Davy v. C.I.A.*, 550 F.3d 1155, 1159 (D.C. Cir. 2008).  Ultimately, the decision to award attorney's fees

---

[4]     This provision is intended "to encourage [FOIA] suits that benefit the public interest" and to provide a party with "compensation for enduring an agency's unreasonable obduracy in refusing to comply with the [FOIA's] requirements."  *LaSalle Extension Univ. v. F.T.C.*, 627 F.2d 481, 484 (D.C. Cir. 1980); *see also Nationwide Bldg. Maint., Inc. v. Sampson*, 559 F.2d 704, 711 (D.C. Cir. 1977) (noting that the FOIA's purpose was to "remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation").

is subject to the Court's equitable discretion.  *McKinley*, 739 F.3d at 711; *Matlack*, 868 F. Supp. at 630.

In addition to demonstrating that he is entitled to attorney's fees and costs, Plaintiff also has the burden of establishing the reasonableness of the fees requested; he must do so both for the number of hours at issue and for the relevant hourly rate charged.  *Role Models Am., Inc. v. Brownlee,* 353 F.3d 962, 970 (D.C. Cir. 2004); *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 38-39, 47 (D.D.C. 2016).  The plaintiff must provide supporting documentation of sufficient detail and probative value so as to enable the court to determine, with a high degree of certainty, that such hours were actually and reasonably expended.  *Role Models Am., Inc.,* 353 F.3d at 970; *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 38.  Thereafter, the burden shifts to the defendant to rebut the presumption of reasonableness with specific evidence. *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 47.

### B.      Is Plaintiff "Entitled" to Recover Attorney's Fees and Costs?

Since there is no dispute that Plaintiff is "eligible" to obtain attorney's fees and costs here, the Court will begin with the question of whether Plaintiff is "entitled" to recover such monies.  In assessing this issue, the Court will utilize the four above-listed factors.

### 1.      The Public Benefit Derived from the Case

First, the Court must consider the benefit to the public stemming from the FOIA disclosure.  The public benefit factor is meant to assess the "degree of dissemination and likely public impact that might be expected from a particular disclosure[,]" since the central purpose of the FOIA is to "assist our citizenry in making the informed choices so vital to 'the maintenance of a popular form of government.'"  *Blue v. Bureau of Prisons*, 570 F.2d 529, 533 (5th Cir. 1978) (quoting S.Rep. No. 854, 93d Cong., 2d Sess. 19 (1974)); *see also Matlack*, 868 F. Supp. at 631-

32. As a result, the "public benefit" factor "does not particularly favor attorneys' fees where the award would merely subsidize a matter of private concern[;]" instead, it "speaks for an award where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Blue*, 570 F.2d at 533-34. It is in the public interest to disclose information to those in the media or to private parties who "seek to shed light on the actions of the government and the underlying circumstances of newsworthy events." *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1389-90 (8th Cir. 1985). Similarly, when the disclosure flowing from a FOIA request has "historical significance," the request is often deemed to benefit the public. *McDonnell v. U.S.*, 870 F. Supp. 576, 585 (D.N.J. 1994) (citations omitted).

In assessing this factor, the Court must consider "the potential public value of the information *sought* . . . not the public value of the information *received*." *Morley v. C.I.A.*, 810 F.3d 841, 844 (D.C. Cir. 2016) (internal quotation marks and citation omitted) (emphasis added). A request has potential public value if there is "at least a modest probability of generating useful new information about a matter of public concern." *Id.*

Plaintiff argues that the first factor weighs in favor of an award because the requested documents "shed further light on an international crime committed by military personnel of the U.S. government, the subsequent difficulty that the federal government had in retrieving and tracking down the remainder of the stolen jewels, and ongoing laundering of the jewels within military ranks, even more than a decade after the original prosecution." (D.I. 43 at 11 (citing *id.*, ex. C at ¶¶ 4-6)) Defendant responds by noting that while the subject matter of the requests is "very interesting," the records relate to "jewels stolen from German royalty by U.S. servicemen nearly 80 years ago[;]" it asserts that "there is no indication that the records uncovered any high profile or high level crimes or cover-ups, agency or law enforcement incompetence, or individual

or institutional inadequacies—the kind of information the public would want and need in order to make 'vital political choices.'"  (D.I. 45 at 8)

In arguing about this factor, neither of the parties provided the Court with (nor cited to) any of the actual records that Plaintiff obtained via his requests.  So, the Court has less information than it otherwise might wish for in order to assess the issue.  But in a declaration submitted along with his reply brief, Plaintiff shared additional detail about:  (1) the public import of the Hesse jewel theft; and (2) the substance of the FOIA documents that he obtained here.  In that regard, Plaintiff states:

- The theft of the Hesse jewels was a "worldwide sensation" in that "[t]hree U.S. Army officers stole the jewels from a German castle . . . as World War II was ending and smuggled most of them into the United States."  Nearly all of the jewels were sold to underworld figures in Chicago, and for more than seven decades, that is all that has been known about the jewels.

- The U.S. Army gained enough evidence to convict the officers who stole the jewels, but probed no further.  The FBI subsequently investigated the jewel theft for two years, and its investigatory efforts have not been made public until now.

- Some of the records that Plaintiff obtained provide "new" information about the jewel theft and its aftermath.  For example, "[f]or the first time ever," the records show that the jewels "were quickly resold, most likely recut and scattered across the country."  The records also shed new light on the Chicago-based "fence" to whom one of the Army officers sold the jewels.  They "reveal the existence of a nationwide organized crime network of jewel thieves and 'fences'" and "disclose the existence of a highly placed FBI informant who was close to the No. 1 fence[.]"  They also reveal possible answers to the question of the informant's motivation for coming forward.  And they "detailed insight into post-war FBI methods and tactics, and the challenges of investigating property crimes when the goods are so easily made untraceable."

- The above information "form[s] the backbone of a lengthy and critical chapter of" Plaintiff's forthcoming book on the jewel theft.

(D.I. 46, ex. B at ¶¶ 6-17)

In light of this, the Court concludes that the first factor militates in favor of an award of fees and costs. There seems to be no dispute that the Hesse jewel theft was a significant historical event. Thus, this subject matter is surely not simply of "private concern." And although the Court need only assess the potential public value of the information Plaintiff *sought* via the FOIA, here the information he actually *received* seems as if it will be of real public benefit. Those materials will help shed new light (thanks to Plaintiff's forthcoming book) on, *inter alia*, how the FBI investigated a very high-profile theft event. This will in turn inform the public about: (1) the investigatory steps the FBI did (and did not) take; (2) the methods the FBI used to gather information; and (3) whether or not the FBI's efforts were ultimately successful (and why). Courts have found that there is a meaningful benefit to the public in learning about the performance of a governmental agency such as the FBI, especially when the agency is investigating a significant matter like this one. *See Rosenfeld v. U.S. Dep't of Justice*, 904 F. Supp. 2d 988, 998 (N.D. Cal. 2012) (concluding that this first factor favored an award of fees and costs, where the records at issue related to the FBI's involvement in furthering the political aspirations of former President Reagan); *Rosenfeld v. U.S. Dep't of Justice*, 903 F. Supp. 2d 859, 869 (N.D. Cal. 2012) (concluding the same, where the FOIA request was made by an investigative reporter and his efforts were undertaken "for the express purpose of disseminating information about FBI activities during the Cold War"); *McDonnell*, 870 F. Supp. at 578, 585 (finding the public would benefit from disclosure of documents to authors who were writing a book about a 1934 fire aboard the Morro Castle Luxury Liner, in that the documents at issue

related to the FBI's "investigative directions, decisions and omission" and served a public
interest in "discovering governmental practices and actions in connection with the [fire] and its
subsequent investigation," especially in light of the "mystery which continues to surround [the]
incident 60 years later") (internal quotation marks and citation omitted); *Weisberg v. U.S. Dep't
of Justice*, Civ. A. No. 75-1996, 1987 WL 11984, at *7 (D.D.C. May 28, 1987) (concluding that
the plaintiff's FOIA request, which resulted in his obtaining 107 photographs regarding the
assassination of Dr. Martin Luther King, was of benefit to the public, as the photographs
"provide significant information about an historical event . . . and they will permit evaluation of
the FBI's performance in investigating the King assassination") (internal quotation marks and
citation omitted).

Nor is it disqualifying that the Hesse jewel theft and the FBI's investigation occurred a
long time ago.  If the matter is one of significant public interest, then FOIA requests that enable
the public to better understand those events—and the government's investigation thereof—
provide a measurable public benefit, even if the events are not of recent vintage.  *See Davy*, 550
F.3d at 1159, 1162 n.3 (concluding that a plaintiff's FOIA request was of public benefit, where
the request resulted in obtaining documents about President Kennedy's assassination and the
Central Intelligence Agency's involvement therein, since the documents, "while arguably not of
immediate public interest, nevertheless enable[d] further research ultimately of great value and
interest, such as here the public understanding of a [long-ago] Presidential assassination"); *see
also McDonnell*, 870 F. Supp. at 578, 585; *Weisberg*, 1987 WL 11984, at *7.  This makes sense,
as the public's view of a governmental agency's performance can be impacted by that agency's
long-term track record, especially as to how the agency acquitted itself in very prominent (if
older) cases.  *Cf. Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 20-21 (D.D.C. 2004)

(finding that the "public benefit" factor was satisfied, where the FOIA request sought evidence regarding potential "[g]overnment misconduct relating to evidence tampering in a criminal trial" relating to a 1972 kidnapping, as "[t]he FBI is a vital part of this nation's law enforcement structure" and "[d]isclosure of this information will assist the citizenry in making informed judgments and opinions about the FBI and how it is operating").

For the above reasons, Plaintiff's FOIA requests had potential public value (and indeed, will likely have actual public value).  Accordingly, the public benefit factor favors an award of attorney's fees and costs.

### 2.      The Commercial Benefit to the Plaintiff and the Nature of the Plaintiff's Interest

Next, the Court must determine whether the second factor (the commercial benefit to the plaintiff) and the third factor (the nature of the plaintiff's interest in the records) weigh in favor of a fee award.  Factors two and three are closely related and are often considered together. *McKinley*, 739 F.3d at 712.  When a litigant seeks disclosure primarily or exclusively for a commercial benefit or out of other personal motives, an award of attorney's fees is generally inappropriate.  *See id*.  This is in part because an award of fees and costs in such circumstances is not needed in order to uphold the purpose of FOIA, as this type of plaintiff has "sufficient private incentive to pursue his FOIA request even without the prospect of obtaining attorney['s] fees." *Id.* at 711 (internal quotation marks and citation omitted); *see Matlack*, 868 F. Supp. at 632.  Yet if the plaintiff is motivated by scholarly, journalistic, or public interest in seeking the records, then his request is more likely to be seen as furthering the purposes of FOIA.  *See Miller*, 779 F.2d at 1390; *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 45.

In this case, Plaintiff is a career investigative reporter who planned on writing a book about the Hesse jewel theft.  (D.I. 43, ex. C at ¶¶ 1-3; D.I. 45, ex. D)  On the one hand, Plaintiff's

12

interest in the book is clearly motivated by his longstanding scholarly and journalistic pursuits. The subject matter of the book relates to misconduct by persons in the U.S. military.  And Plaintiff has worked for decades as a writer for publications that cover the U.S. military; his prior book was about the U.S. Navy's Tailhook scandal.  (D.I. 43, ex. C at ¶ 1; D.I. 45, ex. D; D.I. 46, ex. B at ¶¶ 2-3)  On the other hand, both parties acknowledge that Plaintiff did have an indirect commercial interest in the FOIA material at issue—in that the material was expected to inform the book's content, and the book is going to be sold for profit.  Though the book has not yet been published (such that it is hard to say for sure *how much* commercial benefit it will actually bring Plaintiff), here neither side disputes that Plaintiff will likely earn some money from future sales. (D.I. 43 at 12; D.I. 45 at 9-10)

    In the Court's view, factors two and three should favor Plaintiff's request for fees and costs, at least to some degree.  In this regard, *Davy v. C.I.A.*, 550 F.3d 1155 (D.C. Cir. 2008) is instructive.  In *Davy*, the plaintiff sought documents through the FOIA in relation to his research of a later-published book about President Kennedy's assassination.  550 F.3d at 1160.  The United States Court of Appeals for the District of Columbia Circuit explained that simply because a FOIA requester may use the requested material to help publish a book, that does not mean "that the nature of the plaintiff's interest is 'purely commercial'" (or that these factors should necessarily weigh against a fee award).  *Id*.  The *Davy* Court explained that if the requester's interest in the materials was to further scholarly research about a topic of important public interest (as was the case in *Davy*), then that interest should "at most" be deemed "quasi-commercial[.]"  *Id*. at 1161 (internal quotation marks and citation omitted).  The *Davy* Court noted that "Congress did not intend for scholars (or journalists and public interest groups) to forego compensation when acting within the scope of their professional roles[;]" thus, factors

two and three favored the plaintiff's request, since he had sought the material "not for its republication value standing alone . . . but in relation to a larger work addressing an historical issue of national importance." *Id.* (internal quotation marks and citation omitted). Because the record provided "no basis to doubt that [the plaintiff's] purpose in filing the FOIA request and pursuing litigation was to increase the public fund of knowledge about a matter of public concern," the *Davy* Court held that the district court had abused its discretion in determining that these two factors weighed against the plaintiff. *Id.* at 1162.[5]

Here, the record (including the evidence of Plaintiff's lengthy history of reporting on this type of subject matter) suggests that the FOIA requests were primarily motivated by a scholarly interest in uncovering facts of significant public interest—and not by a desire for pecuniary gain. As such, any financial interest that Plaintiff has in the future book should not dominate the Court's consideration as to these two factors. Therefore, the Court finds that the second and third factors at least slightly favor Plaintiff's Motion. *Cf. McDonnell*, 870 F. Supp. at 586 (concluding that these two factors weighed in favor of a grant of attorney's fees and costs, even where the material would be incorporated into a book the plaintiff intended to sell, because "[a] genuine scholarly interest – no matter how specialized – clearly weighs in favor of a successful plaintiff's recovery of fees in a FOIA action" and because the plaintiff's book was about a matter of public concern, such that "the prospect of substantial commercial gain, if even feasible, is secondary") (internal quotation marks and citation omitted); *see also Kwoka v. I.R.S.*, 989 F.3d

---

[5]    Admittedly, there were other factors at play in *Davy* that are not present here.  For example, the *Davy* Court noted that the plaintiff's book had actually come out before the plaintiff received the relevant FOIA documents.  550 F.3d at 1161.  And there was some evidence in *Davy* indicating that the book had not made the plaintiff very much money.  *Id.*  Nevertheless, the *Davy* Court's assessment, set out above, is instructive as to how the Court should weigh factors two and three in this case.

1058, 1065 (D.C. Cir. 2021) (holding that these two factors weighed in favor of the FOIA

requester, even though the requester was writing a book related to the information sought,

because the requester had a long-standing scholarly interest in the relevant field and her research

would be of benefit to the public and to the U.S. government).

### 3.     The Government's Basis for Withholding Documents

Lastly, the Court must assess whether the government had a reasonable or colorable basis

in law for withholding the requested records.  This "reasonable-basis-in-law factor" is "intended

to weed out those cases in which the government was recalcitrant in its opposition to a valid

claim or otherwise engaged in obdurate behavior."  *Tax Analysts v. U.S. Dep't of Justice*, 965

F.2d 1092, 1097 (D.C. Cir. 1992) (internal quotation marks and citation omitted).  "If the

[g]overnment's position is correct as a matter of law, that will be dispositive.  If the

[g]overnment's position is founded on a colorable basis in law, that will be weighed along with

other relevant considerations in the entitlement calculus."  *Davy*, 550 F.3d at 1162; *Wheeler v.

I.R.S.*, 37 F. Supp. 2d 407, 414 (W.D. Pa. 1998).  However, if the government "has engaged in

obdurate behavior then an award of fees can be appropriate even if other factors weigh against

it."  *Matlack*, 868 F. Supp. at 632.  Defendant has the burden of showing that their withholding

of documents was reasonable.  *Davy*, 550 F.3d at 1162; *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at

45-46.

In this case, there is no record indicating that the FBI *ultimately withheld* any of the

requested records on legal grounds (such as via an argument that the documents were exempt

from disclosure).  Instead, Plaintiff asserts that after he filed his requests at issue, he "suffered

*delays* by the FBI in making an agency determination on his FOIA request"—and that it is these

delays that "favor a fee award under [this] factor."  (D.I. 43 at 13 (emphasis added))  In

response, Defendant contends that delays in producing documents are "significant only to the extent that evidence shows that the delay resulted from a *bad-faith refusal to cooperate*."  (D.I. 45 at 10 (internal quotation marks and citation omitted) (emphasis added))  For this proposition, Defendant quotes from *Miller v. U.S. Dep't of State*, 779 F.2d 1378 (8th Cir. 1985), a case that provides a good starting point for the Court's analysis.

In *Miller*, the United States Court of Appeals for the Eighth Circuit reviewed a district court's grant of summary judgment to the defendant (the United States Department of State) and the district court's denial of the plaintiff's request for recovery of attorney's fees.  779 F.2d at 1380-81.  However, the quotation from *Miller* highlighted by Defendant did not come from the portion of that decision that assessed the attorney's fees issue; instead, it was a part of the *Miller* Court's analysis about whether summary judgment was properly granted.  *Id.* at 1386.  When it came time to assess the fourth "reasonable-basis-in-law" factor regarding the fees issue, the *Miller* Court explained that approximately 360 documents were eventually released as a result of the lawsuit, and that as to those documents, the defendant was arguing that they "were not produced more quickly because of a combination of factors, including processing backlogs, confusion, and administrative error."  *Id*. at 1390.  While it found these reasons to be plausible, and that there was no evidence of "bad faith" on the defendant's part, the *Miller* Court ultimately considered them to be "practical explanations, not reasonable legal bases."  *Id*.  It noted that the "FOIA does not contain a statutory exception for administrative inefficiency[,]" and that when "a private citizen is obliged to seek legal services in order to wrest from the government information which the government had no legal reason to withhold from him, he is entitled under [FOIA] to be reimbursed for the cost to which he has been put."  *Id*.  So, contrary to Defendant's

16

assertion, nothing in *Miller* suggests that "bad faith" delay must have been at play in order for this factor to favor Plaintiff.

The FOIA statute states that after Plaintiff made his original request, the FBI was required to determine "within 20 days (excepting Saturdays, Sundays, and legal public holidays)" whether it was going to comply with the request, and that if it intended to do so that it should produce the documents "promptly[.]"  5 U.S.C. § 552(a)(6)(A) & (c)(i); *Reyes v. U.S. Nat'l Archives & Recs. Admin.*, 356 F. Supp. 3d 155, 167 (D.D.C. 2018).  The statute also provides that in "unusual circumstances[,]" the time limits set out above for a determination may be extended by written notice to the requester, and that the agency can further engage with the requester to arrange an alternate time frame.  5 U.S.C. § 552(a)(6)(B).  The FOIA statute also states that if the matter proceeds to litigation and the government can show that "exceptional circumstances" exist and that the agency is "exercising due diligence in responding to the request," then the court can permit additional time for the agency to complete any record review.  *Id*. § 552(a)(6)(C)(i).  The statute notes that "'exceptional circumstances'" do not "include delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests."  *Id*. § 552(a)(6)(C)(ii).

In light of these statutory commands, here it is clear that—at least with regard to Plaintiff's original FOIA request—Plaintiff was the victim of significant delay.  Plaintiff made that original request in October 2017.  Even assuming that the FBI timely made a determination that it would produce documents regarding that request, the FBI ultimately did not produce the documents "promptly."  *See Citizens for Responsibility & Ethics in Washington v. Fed. Elect. Comm'n*, 711 F. 3d 180, 188-89 (D.C. Cir. 2013) (holding that for documents to be "promptly"

17

produced under FOIA, they must typically be produced "within days or a few weeks" of a determination, not "months or years") (internal quotation marks and citation omitted).  As Plaintiff asserts, (D.I. 43 at 13-14), and Defendant does not contest, (D.I. 45 at 10-11), the FBI never invoked either FOIA's "unusual circumstances" prong or its "exceptional circumstances" prong as a defense to this delay.  Instead, the FBI originally simply notified Plaintiff that, in light of the agency's "current workload and staffing levels" it could take it more than two years to comply with the request.  (D.I. 43, ex. C at ¶¶ 11-12; D.I. 45, ex. A at 25)  After Plaintiff later agreed to break his original request up into 950-page blocks (purportedly so that the processing time would be lessened), his request then remained unassigned for months.  (D.I. 43, ex. C at ¶¶ 20, 25-28; D.I. 45, ex. A at 26-27)  By July 2018, nine months had passed since Plaintiff's original FOIA request was made; at that time, no documents had been produced, Plaintiff's request was still unassigned, and the FBI began to offer shifting deadlines as to when any part of the request would actually be fulfilled.  Facing an indeterminant and lengthy path to obtaining any records at all, Plaintiff then filed this suit.  Only *after* suit was filed did the FBI agree to produce responsive documents (it began to do so in October 2018, a year after the original FOIA request was made).

In light of this record, the Court concludes that:  (1) Plaintiff was the victim of a lengthy delay in the processing of his original FOIA request; and (2) Defendant has not credibly invoked any statutory basis to justify that delay.[6]  Thus, the government has not met its burden to set out

---

[6]     In its briefing, Defendant suggested that "it is not clear that Plaintiff suffered any significant delays" in the processing of his FOIA requests, because Plaintiff was "told before he filed suit that he should expect to see the first release of his request 'in November 2018 at the earliest'" and Defendant mailed the first 500 pages of responsive records on October 31, 2018. (D.I. 45 at 11 (citation omitted))  This argument does not make any sense to the Court.  It suggests that an agency could avoid being deemed untimely under FOIA by simply telling FOIA requesters that their documents will be processed by a date extremely far into the future (perhaps

a reasonable or colorable basis in law for withholding the requested records for as long as they

did. *See, e.g.*, *Reyes*, 356 F. Supp. 3d at 168 (concluding that the purpose of the fourth factor,

which is to "'incentiviz[e] the government to promptly turn over—before litigation is required—

any documents that it ought not withhold'" would not be served if it was "reasonable for

agencies to withhold documents for indeterminant periods of time because they have too many

FOIA requests and too few FOIA staff members[,]" and reasoning that the defendant's "'failure

to produce documents [over a four-month period between when the request was received to when

litigation was filed] due to backlog or administrative issues does not constitute a reasonable basis

in law'") (citations omitted); *Am. Civil Liberties Union v. U.S. Dep't of Homeland Sec.*, 810 F.

Supp. 2d 267, 277 (D.D.C. 2011) (noting that the FBI's "failure to produce documents due to

backlog or administrative issues does not constitute a reasonable basis in law") (internal

quotation marks and citations omitted); *Hall & Assocs. v. U.S. Envtl. Prot. Agency*, Civil Action

No. 1:10-cv-00228 (RLW) (AK), 2011 WL 13373978, at *5 (D.D.C. Nov. 4, 2011) ("Ten

months can be considered an unreasonable time period to release documents without any type of

explanation or justification."); *Matlack*, 868 F. Supp. at 633 (determining that this factor favored

an attorney's fees award, in part, because although the governmental agency asserted that it had a

"large docket of [FOIA] appeals and are working as quickly as possible to resolve them," it did

---

many years into the future) and then "complying" with the agency's own self-generated, outsized
deadline.  That cannot be the way the FOIA was intended to work.

Nor could Defendant credibly argue that its production of documents was timely because,
after being sued, it agreed to a timetable for production and then largely met that timetable.
Courts have repeatedly noted that to countenance such an argument would run counter to the
purpose of the FOIA, which is to incentivize timely production of documents *without* the need
for a requester to resort to litigation.  *Davy*, 550 F.3d at 1163; *Hall & Assocs. v. U.S. Envtl. Prot.
Agency*, Civil Action No. 1:10-cv-00228 (RLW) (AK), 2011 WL 13373978, at *5 n.3 (D.D.C.
Nov. 4, 2011).

not rely on FOIA's "exceptional circumstances" prong in making this argument, nor did it explain why its backlog would actually amount to a showing of exceptional circumstances) (internal quotation marks and citation omitted). The fourth factor therefore weighs in favor of awarding Plaintiff attorney's fees and costs.

### 4.    Conclusion

In sum, the Court finds that all four factors favor an award of attorney's fees and costs to at least some degree. As a result, it is clear that Plaintiff is "entitled" to such an award.

### C.    Reasonableness of Plaintiff's Requested Attorney's Fees and Costs

Having concluded that Plaintiff is both eligible for and entitled to an award of attorney's fees and costs, the Court must determine if Plaintiff has met his burden to demonstrate that the requested fees and costs are reasonable.

The FOIA allows the Court to award "reasonable attorney fees and other litigation costs reasonably incurred." 5 U.S.C. § 552(a)(4)(E)(i). The plaintiff must provide contemporaneous records detailing time spent on legal tasks, the attorneys' rates, and descriptions of the attorneys' work "to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 38 (internal quotation marks and citations omitted); *see also Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 142 F. Supp. 3d 1, 10 (D.D.C. 2015). Fees and costs should not be awarded for excessive, redundant or otherwise unnecessary work. *Citizens for Responsibility & Ethics in Washington*, 142 F. Supp. 3d at 9-10. With these principles in mind, a court reviews the provided billing records and calculates reasonable attorney's fees; the typical method for doing so is to multiply the hours reasonably expended in the litigation by a reasonable hourly fee, producing the "lodestar" amount. *Am. Oversight v. U.S. Dep't of Justice*,

375 F. Supp. 3d 50, 69 (D.D.C. 2019); *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 47.  The Court retains discretion to adjust the lodestar amount based on other relevant factors.  *Elec. Priv. Info. Ctr.*, 218 F. Supp. 3d at 47.

Here, Plaintiff has provided the Court with detailed billing records that describe the tasks performed by each attorney, the date on which the task was performed and the amount of hours spent performing the task.  (D.I. 43, ex. A; *id.*, ex. B; D.I. 46, ex. A)  The records are well organized and sufficiently detailed, such that the Court is able to assess the reasonableness question.

A reasonable hourly fee for each attorney is to be determined by the prevailing market rate in the relevant community, taking into account the attorney's skill and experience.  *Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 72 F. Supp. 3d 338, 349 (D.D.C. 2014). Plaintiff's hourly rates for each of its six attorneys in question are based on the prevailing market rates in the Philadelphia area for counsel with corresponding years of experience.  (D.I. 43, exs. D-G)[7]  Defendant has not objected to these hourly rates.  Thus, the Court is satisfied that the rates were appropriate.

The Court has also reviewed the descriptions of the work performed by each of the attorneys at issue.  On an initial review, the records all appear to demonstrate that the hours billed were for work performed on this matter, and that the nature of that work was reasonable

---

[7]    Plaintiff's counsel have charged hourly rates that are consistent with those relied upon by Community Legal Services, a Philadelphia-based non-profit organization.  (D.I. 43, ex. D)  In the case of the Troutman Pepper attorneys, these rates were less than what those attorneys would normally charge in their everyday practice.  (D.I. 43, ex. G at ¶¶ 7-10)  Community Legal Services' fee schedule has been held in the past to be a "fair reflection of the prevailing market rates in Philadelphia."  *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2007) (internal quotation marks and citation omitted).

for litigation of this type.[8]  According to Plaintiff's attorneys' billing statements, Plaintiff's

attorneys worked for a total of 148.48 hours, which, when multiplied by each attorney's

respective hourly rate (and including the request for costs of $509.56), provides for the total

amount of $60,732.84.  (*Id.*, ex. A; *id.*, ex. B; D.I. 46, ex. A)

Since Plaintiff has met its burden to establish, as an initial matter, that the requested fees

are reasonable, Defendant now has the burden to challenge and rebut the reasonableness of

Plaintiff's request.  *See Elec. Privacy Info. Ctr. v. N.S.A.*, 87 F. Supp. 3d 223, 229 (D.D.C. 2015)

(noting that a FOIA plaintiff meets its initial burden when it submits sufficient evidence

regarding its attorney's billing practices, their skill, experience and reputation, and the prevailing

market rates in the relevant community).  Defendant attempted to do so by raising a few different

issues.  (D.I. 45 at 11-15)[9]  The Court addresses Defendant's objections below.

### 1.    "Straightforward" Nature of the Case

The DOJ first argues that the sheer volume of billing entries, when viewed as a whole,

are unreasonable and excessive because "[t]his was a straightforward FOIA case in which

Plaintiff filed a Complaint (and later a Supplemental Complaint), the FBI processed responsive

---

[8]      By way of example, the vast majority of the attorney time entries relate to small
periods of time (i.e., fractions of an hour) billed for work including communicating with the
client, reviewing documents, and the like.  (D.I. 43, ex. A; *id.*, ex. B; D.I. 46, ex. A)  The largest
expenditures of time were for the case events that one would expect:  the drafting, research and
filing of the relevant complaints and the legal briefing in the case.  (*Id.*)  Even as to those more
significant efforts, the amount of time expended did not seem outsized to the Court at first
glance.  (*Id.*)  And the relatively minimal request for $509.56 in costs, (D.I. 43, ex. B), is surely
reasonable.

[9]      Defendant also suggests that if the Court is to award any fees, then it should
award "no more than $10,000 for the litigation[.]"  (D.I. 45 at 15)  Defendant does not explain
how it arrived at that figure.  The Court declines to place an "arbitrary cap" on Plaintiff's award
by blessing a monetary amount that Defendant appears to have picked "out of thin air."  *Office of
Fulton Cty. District Attorney v. U.S. Dep't of Justice*, Case No. 1:18-cv-5902-MLB, 2021 WL
4205666, at *10 (N.D. Ga. Sept. 16, 2021).

records, and there was no briefing" and yet "there were approximately 342 billing entries by

Plaintiff's counsel." (*Id.* at 12-13; *see also id.* at 15)  In its answering brief, Defendant provides

a number of examples of time expenditures that it believes were excessive.  (*Id*. at 13)

To be sure, a reduction of a fee award is warranted when time spent on the litigation is

excessive by way of inefficiency, waste, or duplication.  *Rosenfeld*, 904 F. Supp. 2d at 1008.

Below, the Court addresses each of the different arguments regarding alleged inefficiency or

waste or duplication that were raised by Defendant:

- Defendant argues that it was excessive for Plaintiff to bill 15.6 hours ($4,216) for drafting, reviewing, filing and serving the five-page initial Complaint, and 12.4 hours ($5,281.80) for drafting, reviewing and filing the eight-page Supplemental Complaint.  (D.I. 45 at 13)  It is true that these pleadings, particularly the original Complaint, were not of great length. But it does take some time to carefully research and draft complaints like these, and Plaintiff largely allocated this work to just one or two attorneys per pleading.  Additionally, pursuant to D. Del. LR 83.5, Plaintiff was required to associate with Delaware counsel in this case; Delaware counsel is required to file all papers and be familiar with the issues in the case.  So, that will necessarily add some additional costs.  In light of all of this, and because the hours and fees at issue are in line with other awards deemed reasonable in similar cases, the Court does not see a concern here.  *See Am. Oversight*, 375 F. Supp. 3d at 70-71 (finding an award of $5,324.30 to be reasonable for three attorneys' work on a "routine FOIA complaint"); *Hall & Assocs. v. U.S. Envtl. Prot. Agency*, Civil Action No. 15-286 (RBW), 2016 WL 10746643, at *6 (D.D.C. 2016) (finding reasonable an award of $6,430 for three attorneys' work on an eight-page FOIA complaint, encompassing at least 24 hours of work); *cf. Elec. Priv. Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 158 (D.D.C. 2015) (reducing the amount of fees awarded for work by three attorneys on a "straightforward, nine-page" FOIA complaint to $2,535, representing 9.5 hours of work).

- Defendant objects to approximately 100 time entries, totaling 17.6 hours ($5,502) that "related primarily to internal correspondence between co-counsel or review of another counsel's correspondence with Plaintiff."  (D.I. 45 at 13)  Most

substantial here are the entries for Goldstein Law Partners attorney Britain Henry.  Mr. Henry had 5-8 years of experience during the time of this litigation; he worked on this matter with a more senior attorney at Goldstein Law Partners, Tuan Samahon, who had 18-20 years of experience during the time of the litigation.  (D.I. 43, ex. A; *id*., ex. E at ¶ 4; *id*., ex. F at ¶ 4)  A conservative review of Mr. Henry's time entries shows that as to approximately 80 such entries, totaling over 15 hours of attorney work, Mr. Henry billed time relating to his own communications with Mr. Samahon (communications that sometimes included other team members), or time spent reviewing e-mails that Mr. Samahon wrote.  (*Id.*, ex. A; D.I. 46, ex. A)  Plaintiff rightly notes that involving a more junior attorney in the litigation can be helpful from a cost perspective, as it can permit "senior attorneys with relatively higher rates to delegate tasks to relatively junior attorneys with comparatively lower rates[.]"  (D.I. 46 at 8)  And clearly Mr. Henry played an important role in this case for Plaintiff, which should be taken into account in the Court's calculus.  On the other hand, obviously all of the time described above relates to communications that would not have been needed if only one attorney from the firm were performing the particular task at hand.  And so it seems likely that at least some of these charges could have been avoided, without any loss of efficiency, if only one attorney (not two) had been involved in the task.  *Reyes*, 356 F. Supp. 3d at 170 ("The Court will reduce Plaintiff's fee award . . . because the presence of two attorneys resulted in the unnecessary duplication of efforts and fees."); *cf. Bloomgarden v. U.S. Dep't of Justice*, 253 F. Supp. 3d 166, 179 (D.D.C. 2017).  In an attempt to account for the inefficiency related to some of these charges, while also acknowledging the merits of Plaintiff's argument described above, the Court will reduce the amount requested by one-third of the approximately 15 hours at issue (i.e., 5 hours), utilizing the hourly rate that Mr. Henry most often billed at during the litigation ($280/hour).  Together, this amounts to a reduction of $1,400.

- Defendant argues that it was unreasonable for Plaintiff's counsel to spend 9.2 hours ($3,207) on "FOIA research" because "outside counsel was admitted to this case, presumably to provide FOIA expertise."  (D.I. 45 at 13)  The Court rejects the idea that simply because certain attorneys associated with a case are FOIA experts, that means they do not need to do legal research on the state of FOIA law.  The amount of such research here—barely more than one eight-hour day's worth of research—is not outsized.

24

- Defendant asserts that it was unreasonable for Plaintiff to bill 14.7 hours ($5,316.50) for "reviewing releases" (i.e., FOIA documents provided by Defendant in response to Plaintiff's requests).  (D.I. 45 at 13)  Generally, FOIA litigants "should not recover fees for time spent reviewing responsive documents[.]"  *WP Co. LLC v. U.S. Small Bus. Admin.*, 514 F. Supp. 3d 267, 278 (D.D.C. 2021) (internal quotation marks and citations omitted).  However, courts often grant "some fees where document review is necessary to evaluate the sufficiency of production or to challenge withholdings."  *Id.* (internal quotation marks and citations omitted); *see also Elec. Priv. Info. Ctr.*, 80 F. Supp. 3d at 159 (noting that fees should not be awarded for reviewing documents to the extent that the time reviewing is for a purpose unrelated to the FOIA litigation, but fees should be awarded "to the extent that the released documents are being reviewed to evaluate the sufficiency of the release or the propriety of a specific withholding so that the attorney can then challenge the release or withholding").  Therefore, the Court should award fees for reviewing documents when the reviews are conducted with the purpose of determining whether Plaintiff should seek further court-ordered relief, irrespective of whether Plaintiff subsequently challenges the sufficiency of the release.  *Elec. Priv. Info. Ctr.*, 72 F. Supp. 3d at 351; *see also Reyes*, 356 F. Supp. 3d at 172.  Here, Plaintiff's counsel has asserted that the review of disclosed documents was necessary for them to know whether Defendant fully complied with their requests and whether further litigation was necessary.  (D.I. 46 at 9)  Indeed, some of Plaintiff's counsel's time entries show that counsel was assessing what redactions were contained in reviewed documents, and was discussing those redactions with their client.  (D.I. 43, ex. A at 3, 4, 8)  Defendant, who bears the burden to demonstrate that the fees at issue are unreasonable, did not explain how or why the reviews were unnecessary to the litigation.  Thus, the Court concludes they are reasonable.  *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 75 (D.D.C. 2013) (concluding the same).

- Lastly, Defendant suggests that, simply as a general matter, the total amount of hours worked and total amount of fees requested show that the request is unreasonable.  (D.I. 45 at 13-14 ("The sheer volume of billing on this simple FOIA case is evidence of the excessive nature of this fee petition."))  The Court cannot agree.  In doing so, the Court again acknowledges that this was not the most complicated FOIA case one will see.

The pleadings were not lengthy and Plaintiff did not have to resort to briefing in order to obtain the records at issue. Despite this, however, a good deal of work was required of Plaintiff's counsel in this case. Four different sets of FOIA requests were at issue, which resulted in production of nearly 7,800 pages of records—records that were produced in many different tranches. And the parties at times sparred over whether certain redactions to the produced documents were appropriate (although those disputes never reached the Court). These facts, along with complications that arose due to the pandemic, meant that the litigation lasted for over four years. Defendant cites to *Auto All. Int'l, Inc. v. U.S. Customs Serv.*, 155 F. App'x 226 (6th Cir. 2005) as an example of a case where fees were reduced where "the prevailing party did not exercise sound billing judgment." (D.I. 45 at 12) But in *Auto Alliance*, the Court reduced the fee request by 25% in a "relatively unexceptional FOIA case" where the plaintiff's counsel submitted a request for 510.25 hours worked, which the Court categorized as a "high" number. 155 F. App'x at 228. Here, in contrast, Plaintiff seeks reimbursement for only 148.48 hours of work—nearly a third of the hours at issue in *Auto Alliance*.

## 2.   "Fees on Fees"

Defendant also argues that "if the Court reduces the fee award, it should reduce [any award for] fees on fees accordingly." (D.I. 45 at 15) It is well established that a FOIA plaintiff may be compensated for "[h]ours reasonably devoted to a request for fees[.]" *Reyes*, 356 F. Supp. 3d at 173 (internal quotation marks and citation omitted); *see also Am. Oversight*, 375 F. Supp. 3d at 72.

Here, Plaintiff prevailed in the litigation. It was entitled to seek reimbursement for the fees expended in pursuing this Motion. And Defendant makes no specific argument as to why any of the "fees on fees"-related expenses that Plaintiff seeks are excessive or unwarranted. (D.I. 45 at 15) For all of these reasons, then, the Court declines to reduce the requested award on this basis.

## III.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's Motion is GRANTED-IN-PART and DENIED-IN-PART.  The Court also ORDERS that Plaintiff shall receive $58,823.28 in attorney's fees (i.e., the entirety of the amount of fees requested, minus $1,400 for the reasons set out in Section II.C.1) and costs in the amount of $509.56.  This amounts to a total award of $59,332.84.

Dated:  September 30, 2022

Christopher J. Burke
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE